UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CR-013 JD |
| | ) | |
| DANIEL HASLAM | ) | |

## Memorandum Opinion and Order

Now before the court is the Defendant Daniel Haslam's motion to suppress evidence taken from his residence and vehicles under a search warrant. Haslam filed his motion on April 19, 2013, the government responded on May 7, and Haslam replied on May 17 [DE 25; DE 27; DE 28]. Haslam contends that the affidavit supporting the search warrant did not provide probable cause because it relied on an informant and a "jilted lover harboring a grudge against the defendant" whose statements were unsworn and uncorroborated, and the affidavit gave insufficient facts indicating the witnesses were reliable and credible. The government argues that there was ample probable cause and even if there wasn't, the officers reasonably relied in good faith on the decision to issue the warrant. The court agrees with the government and denies the motion for the reasons that follow.

## I. Background

On August 3, 2012, Donald Coy approached Marshal Roger Bowland and informed Bowland that he had personally observed a methamphetamine lab in the residence of Daniel Haslam located at 407 North Jefferson Street, Converse, Indiana, the day before. Coy also told Bowland that he had observed methamphetamine precursors, including Coleman fuel, acid, lye, batteries, and fertilizer, along with mason jars, coffee filters, and a grinder. Coy specifically described where Haslam stored his meth, indicating that it was kept in a cue stick. Coy also indicated that Haslam had a digital scale that resembled a compact disk storage case and had a video surveillance camera system installed in

the residence that allowed Haslam to monitor activities both inside and outside of the apartment. Coy was also very specific in describing the firearms that Haslam had, including a 30-30 rifle, a 12 gauge shotgun, and a .22 caliber rifle. Coy reported that Haslam had fired rounds inside the apartment. Coy also indicated that Haslam had homemade suppressor/silencers including one made with the aluminum tubing of a "mag-light" flashlight.

Thereafter, on August 27, 2012, Laci Sample approached Bowland at a gas station in Converse, Indiana at approximately 3:00 p.m. Marshal Bowland observed that she seemed to be very upset and scared, and wore large sunglasses that did not allow him to observe her eyes or the area surrounding them. Ms. Sample indicated she really needed to talk to Bowland, so he told her to meet him at the office but she didn't show up as requested. Rather, at approximately 4:00 p.m., her grandfather Mike Sample came to the office and indicated that Ms. Sample had gone into hiding. Mr. Sample explained that Haslam had assaulted and battered Ms. Sample over the weekend and while Ms. Sample wanted to file charges she was scared to do so.

On August 29, 2012, Laci Sample and Mike Sample met with Bowland to have Ms. Sample explain how she had been victimized. A recorded statement was taken. During the recorded statement, Ms. Sample explained that she had been staying on and off with Haslam for two weeks at his residence located at 407 North Jefferson Street, Converse, Indiana leading up to August 25, 2012. On that date, Ms. Sample asked Haslam why so many people came to his residence and stayed only a few minutes and she asked him why he needed surveillance cameras. After Haslam became aware that Ms. Sample was receiving texts on her phone while she was in the residence, Haslam told her that he believed she was a police officer. Haslam pushed her on the bed and began to hit her on the face and head. Bowland observed visible bruising around both of Ms. Sample's eyes, face, arms, and legs when he took her recorded statement on August 29, 2012.

During the recorded statement, Ms. Sample also described in detail how Haslam would not

allow her to leave the residence until approximately 6:00 p.m. on Sunday, August 26, 2012 when

she convinced him that people would start looking for her if she did not pick up her child. During

the time that she was held, Haslam put a gun with a silver barrel to Ms. Sample's head and

threatened to kill her. He also more than once screwed and unscrewed several different homemade

silencers, including one Ms. Sample described specifically as having been made from a flashlight,

onto and off of firearms. Ms. Sample described in particular how Haslam had fired several shots

into the floor of the apartment while the silencer was on the gun, and he even placed a firearm with

a silencer into her mouth and threatened again to kill her. Ms. Sample also described how Donald

Coy had been in the apartment Saturday night, August 25, 2012, when the incident started. When

asked, Ms. Sample stated that she observed Haslam and Coy smoke methamphetamine together at

the apartment during the two weeks she had been around the residence.

On August 30, 2012, Bowland sought a search warrant and filed an affidavit setting forth the

above details [DE 25-2]. Based on this affidavit, a Miami Superior Court Judge issued a search

warrant authorizing the search of 407 North Jefferson Street, Apartment #4 and any vehicles owned

or used by the occupant of the dwelling, Daniel Haslam, found at or near the premises [DE 25-1].

The warrant commanded a search for evidence in relation to the following: the crimes of

confinement and battery; evidence that a firearm was discharged within the residence; handguns,

long guns, ammunition, shell casing, silencers or other evidence of the use of a firearm within the

home; and evidence of the use or manufacture of methamphetamine within the location, including

any precursors or paraphernalia used in the manufacture or use of methamphetamine.

According to the affidavit of Laurie A. Jolley, Special Agent for the Bureau of Alcohol,

Tobacco, Firearms and Explosives [DE 25-3], submitted in support of the criminal complaint filed

in this court, law enforcement agents established surveillance on Haslam's residence later that day.

Haslam was observed leaving his residence and entering a vehicle parked outside. Andrea Hahn, as later identified, was driving the vehicle when law enforcement agents stopped it a short distance from the residence. During the initial roadside search police recovered from Haslam a .22 caliber Beretta pistol loaded with 8 rounds of ammunition and a modified attachment to the barrel which allowed a silencer to be secured to the firearm. Haslam was taken into custody.

Law enforcement agents of the Peru City Police Department, Indiana State Police and Converse Police Department then executed the search warrant at 407 North Jefferson Street, Apartment #4. Recovered during a search of the apartment were a surveillance monitoring system; homemade silencers including one made from a mag-lite flashlight; tools and materials claimed to be used in the manufacture of firearm silencers; two .22 caliber loaded rifles; a .22 caliber revolver; items associated with the manufacture of methamphetamine; methamphetamine recovered from a hallowed out pool cue; a .20 gauge shotgun; and spent .22 caliber shell casings, as well as deformed .22 caliber bullets located under the carpeting.

Law enforcement agents also observed a large box truck parked just outside the rear door of Haslam's apartment with an electrical plug running from the truck to Haslam's apartment unit. Pursuant to the authority of the search warrant the box truck was searched, resulting in the discovery of a mobile metal workshop and tools/materials used to manufacture suspected silencers. A .30-30 loaded caliber rifle was also recovered from the box truck.

As a result of the law enforcement action taken on August 30, 2012 and further investigation, Haslam was charged in the Miami Circuit Court, under cause number 52C01-1208-FB with various offenses [DE 25-4]. Haslam was released on bail, until his arrest subsequent to the filing of the criminal complaint in this court on January 25, 2013 [DE 1].

Haslam argues that Bowland's affidavit presented in support of the request for the issuance of a search warrant to the Miami County Judge is insufficient to competently establish probable cause for the issuance of a search warrant.[1] Haslam argues Bowland's affidavit is not based on his own eyewitness observation of criminal activity, but instead recounts information provided to him by two sources of unknown reliability, Donald Scott Coy and Laci Sample—neither of which provided sworn statements or appeared before the issuing judge. Haslam further contends the affidavit does not establish that any investigation was undertaken by Bowland or any law enforcement agent to corroborate the averments of Coy and Sample, it fails to provide any information relating to the prior criminal history of Coy or Lacy, and it is "conclusory" because it states that 407 North Jefferson Street, Apt. #4 is the "known" residence of Haslam.

Further, to be entitled to an evidentiary suppression hearing, a defendant must present "definite, specific, detailed, and nonconjectural" facts that justify relief, and there must be a disputed issue of material fact that will affect the outcome of the motion. *See United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011); *United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001); *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir. 1986). Here, the only disagreement is whether the application for the search warrant supports the determination of probable cause or, at the very least, is not so meager that a reasonable police officer would recognize the warrant to be invalid. These are purely legal determinations that do not require factual development through an evidentiary hearing. *See Walker*, 237 F.3d at 850-51.

---

[1]Haslam only contests whether probable cause supported the issuance of the warrant, not whether the searches conducted of the residence and vehicles were within the warrant's scope which explicitly permitted a search of "407 N. Jefferson St., Apt. 4, Converse, Indiana, . . . and any vehicles owned or used by the occupant of the dwelling, Daniel Haslam, that are found at or near the premises." [DE 25-1].

## II. Analysis

When, as here, an affidavit is the only evidence presented in support of a search warrant, the validity of the warrant turns on the strength of the affidavit. *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003) (citation omitted). "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* at 756 (other citations omitted).

Where probable cause is based on information supplied by an informant (like Coy—as conceded by the government), the parties agree [DE 25 at 6; DE 27 at 2; DE 28 at 1-2] that the court employs a totality of the circumstances inquiry encompassing several factors: first, the degree to which the informant acquired knowledge of the events through first hand observation; second, the detail and specificity of the information provided by the informant; third, the interval between the date of the events and a police officer's application for the search warrant; and fourth, the extent to which law enforcement corroborated the informant's statements. *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (citing *United States v. Garcia*, 528 F.3d 481, 485-86 (7th Cir. 2008)). Also relevant is whether the informant accompanied the applicant before the judge who approved the warrant. *See United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008). No one factor is determinative and a "deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Searcy*, 664 F.3d at 1122 (citing *Peck*, 317 F.3d at 756).

In the present case, the court concludes that, based on the totality of circumstances, Marshal Bowland's affidavit provided sufficiently reliable information to support the finding of probable cause and the issuance of a search warrant.

The initial information voluntarily supplied by Coy to Marshal Bowland was based on Coy's

first hand observations no later than August 2, 2012, when Coy was in Haslam's apartment located at 407 North Jefferson Street. Coy provided detailed information concerning the contents of Haslam's apartment, which included a meth lab and meth precursors. Coy specifically identified the various meth precursors he observed in Haslam's apartment and specifically identified where Haslam kept his meth—in a cue stick. Coy also reported specific details concerning firearms and homemade silencers possessed by Haslam, and indicated that one of the silencers was made from a mag-light flashlight. Moreover, Coy indicated Haslam had even fired rounds while inside the apartment and maintained a surveillance system.

While it is true that Coy did not appear before the judge who approved the warrant and provide a sworn statement, this deficiency is compensated for by the degree to which Coy acquired knowledge of the events through his first hand observations and to which he provided great detail and specificity of Haslam's activities. Moreover, Coy's statements were not uncorroborated as Haslam argues. Instead, less than four weeks later, victim Laci Sample, who appeared visibly battered and bruised, met Bowland to report her personal observations of Haslam and his activities immediately prior to August 26, 2012. Ms. Sample gave detailed information about how Haslam battered her, threatened to kill her, and held her hostage. She also provided specific details relative to Haslam's drug use and trafficking, firearm possession, and possession of silencers including one made from a flashlight. She further reported, like Coy, that Haslam had fired several shots while in the apartment and maintained a surveillance system. Despite being visibly fearful previously, Ms. Sample provided this information in a recorded statement only one day prior to Bowland's application for the warrant.

While a complaint by the putative victim or a single witness is generally sufficient to establish probable cause, Haslam argues that in this case Bowland had a reason to question Ms. Sample's first hand account because she appeared to be a reluctant witness and jilted lover harboring

7

a grudge against Haslam. *See, e.g., Askew v. Chicago*, 440 F.3d 894 (7th Cir. 2006); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986). However, Bowland was able to evaluate and substantiate Sample's credibility by personally observing her fearfulness and battered appearance. Moreover, Ms. Sample provided a great deal of specificity concerning Haslam's criminal activities immediately prior to the warrant's application, including the fact that she saw Coy and Haslam smoke meth together at the apartment during the two weeks she stayed on and off with Haslam at his apartment. Importantly, Ms. Sample even allowed her statement to be recorded, and the several critical details she provided coincided with Coy's detailed account of Haslam's criminal activities, i.e. use of a flashlight to build silencers, the presence of meth, and Haslam's firing rounds inside his apartment and installation of surveillance cameras. Based on all of the information available, Bowland did not have any reason to suspect Ms. Sample's account, thereby making further investigation prudent. *Id*. Lastly, the mere omission of Coy and Sample's suspected criminal background or motive to provide information does not invalidate a warrant where the remainder of the affidavit establishes that the information was sufficiently reliable. *See United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006).

The court cannot agree with Haslam's conclusion that Marshal Bowland's affidavit didn't provide sufficient probable cause for the issuance of a search warrant. "Probable cause requires only a probability or substantial chance that evidence may be found; it does not, by contrast, require absolute certainty." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006). Marshal Bowland identified his sources by name, both sources provided very similar details about their first hand observations of Haslam's criminal activities while at his apartment on North Jefferson Street, and the events occurred within days of their disclosure to Bowland on August 3 and 29, shortly before the search warrant was issued on August 30. Under a totality of the circumstances analysis, the court concludes that the information set forth in Marshal Bowland's affidavit provided the issuing

judge with a substantial basis for finding probable cause for issuance of the warrant to search Haslam's apartment and vehicles. *See United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005).

Even if the court were to conclude that the information in the affidavit does not demonstrate probable cause that contraband would be found in Haslam's apartment and vehicles, suppression would be appropriate only if the officer lacked good faith in relying on an invalidated search warrant. *See United States v. Leon*, 468 U.S. 897, 920-22 (1984). Marshal Bowland's decision to seek a warrant is prima facie evidence that he was acting in good faith. *Sidwell*, 440 F.3d at 869. A defendant can rebut this presumption of good faith by showing that (1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008).

Haslam does not allege that the Miami Superior Court Judge who issued the warrant abandoned his judicial role. Instead, he seemingly submits that the second and third exceptions to the good faith doctrine apply [DE 28 at 5-6]. Specifically, Haslam argues Bowland was reckless in submitting the affidavit without obtaining additional information concerning Coy and Sample's reliability and credibility, placing them under oath, or making them appear before the issuing judge. Haslam also argues Bowland could not have reasonably relied on the judge's issuance of the warrant because the affidavit presented solely "baseless statements" without Bowland's conducting any independent investigation.

To be clear, Haslam does not suggest that Bowland made false statements in securing the warrant. Haslam also does not argue that Bowland omitted material information known to him. Rather, he contends that Bowland could have included additional information in the affidavit had he further investigated the matter and uncovered additional facts indicative of the witnesses'

9

credibility/reliability—yet, Haslam does not identify what facts Bowland might have turned up or explain the effect these facts may have had on the probable cause determination.[2]

The Court cannot say that Bowland was dishonest or reckless in preparing the affidavit, *see United States v. Woolsey*, 535 F.3d 540, 547 (7th Cir. 2008), nor that the supporting affidavit is so facially deficient that no reasonable officer could have relied upon it. *See United States v. Carmel*, 548 F.3d 571, 576 (7th Cir. 2008). As explained above, Haslam provides no details or offer of proof concerning the additional information that Bowman should have discovered prior to seeking the warrant or how the information could have affected the probable cause determination. Further, Coy and Sample's first hand, independent, detailed descriptions of Haslam's apartment unit and his gun and drug activity in the apartment provided Marshal Bowland with, at a minimum, indicia of recent illegal activity in that apartment. Moreover, Ms. Sample's visibly battered appearance, along with her detailed description of the events that took place in Haslam's apartment immediately prior to her reporting the crime, was sufficient information for Bowland to reasonably conclude Haslam had criminally confined Ms. Sample, beat her, and threatened to kill her while holding a gun to her head. Therefore, the good faith exception applies here and saves from exclusion the evidence discovered during the search of Haslam's apartment and vehicles.

### III. Conclusion

For the foregoing reasons, the court **DENIES** Defendant's motion to suppress [DE 25] and

---

[2]These conclusory allegations do not entitle Haslam to a hearing consistent with *Franks v. Delaware*, 438 U.S. 154 (1978), because Haslam's bald assertions without any offer of proof do not constitute a substantial preliminary showing that Bowland omitted material information intentionally or with reckless disregard for the truth. *See United States v. McMurtrey,* 704 F.3d 502, 509 (7th Cir. 2013) (to obtain a *Franks* hearing "[t]he defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations, and the claim of falsity should be substantiated by the sworn statements of witnesses . . . the defendant must also show that . . . if the deliberately or recklessly misleading omissions [were] included, probable cause would have been absent."); *United States v. Carmel*, 548 F.3d 571, 577 (7th Cir. 2008); *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006); *see also United States v. Williams*, No. 11-3129, 2013 WL 2149897 (7th Cir. May 20, 2013) (holding that a *Franks* violation based on an omission requires a showing that the material information was omitted deliberately or recklessly to mislead the issuing magistrate; and, noting that an affiant acts with reckless disregard for the truth when he "'in fact entertain[s] serious doubts as to the truth of his allegations.'") (citations omitted).

his request for a suppression hearing.

SO ORDERED.

ENTERED: May 24, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court